**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROSEMARY DALY, D.O.,

*Plaintiff,*

v.

UNITED STATES OF AMERICA, et al.,

*Defendants.*

**Case No. 1:24-CV-1994-RCL**

## MEMORANDUM OPINION

Plaintiff challenges the U.S. Department of Health and Human Services's ("HHS") decision to maintain a malpractice report in which she is named in the National Practitioner Data Bank ("NPDB") under the Administrative Procedure Act ("APA"). Plaintiff and HHS have cross-moved for summary judgment. *See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 23; Defs.' Mot. for Summ. J. ("HHS Mot."), ECF No. 24. For the reasons stated herein, Plaintiff's motion will be denied without prejudice, and HHS's motion will denied without prejudice.

## I. Background

### A. Statutory Background

In 1986, Congress enacted the Health Care Quality Improvement Act ("the Act") in reply to the "increasing occurrence of medical malpractice" and "the need to restrict the ability of incompetent physicians to move from State to State without disclosure . . . of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11101(1)–(2).

To do so, § 11131 of the Act requires insurance companies that "make[] payment under a policy of insurance, self-insurance, or otherwise in settlement (or partial settlement) of . . . a

medical malpractice action" to report certain information including the name "of any physician or . . . practitioner for whose benefit the payment is made" and "a description of the acts or omissions and injuries or illnesses upon which the action or claim was based." 42 U.S.C. § 11131; *see also* 45 C.F.R. § 60.7. The statute allows reporting to occur "in such form and manner as the secretary prescribes." 42 U.S.C. § 11134. Accordingly, the Secretary established the NPDB. 45 C.F.R. § 60.1.

**B. Factual Background**

This case begins in 2018, when a stem-cell treatment went wrong. AR 213. The patient in question suffered serious injuries and served a "Notice of Intent to Initiate Litigation for Medical Negligence and Personal Injury" ("Notice of Intent") on the Florida clinic that performed the treatment. AR 212. Florida law requires would-be plaintiffs in medical malpractice suits file those notices before filing their complaint. Fla. Stat. § 766.106(2).

Plaintiff Rosemary Daly practiced at that clinic and was named along with a number of fellow practitioners in the Notice of Intent. Specifically, the Notice of Intent alleged that Plaintiff and other practitioners "were acting in the course and scope of their employment by and through" the clinic and were therefore "vicariously liable for the actions of their agents, servants and employees." AR 214. Though the Notice of Intent detailed specific practitioners who actually treated the patient, Plaintiff was not one of them. AR 213. The clinic itself submitted an "Adverse Incident Report," as required by Florida law, *see* Fla. Admin. Code 64B8-9.0001, which did not list Plaintiff as a party involved in the incident, *see* AR 102.

A couple months after serving the Notice of Intent, the patient's attorney served a letter on the clinic which included a draft complaint. *See* AR 283–345. Plaintiff was not listed as a defendant in the draft complaint. *See* AR 286. Plaintiff's name does not appear in the complaint's allegations either, while other practitioners' names do. *See, e.g.*, AR 299, 303. The demand letter threatened to file the complaint unless the clinic agreed to mediation and set a deadline of February 11, 2019. AR 283–84.

Ultimately, the clinic agreed to the mediation and reached a settlement agreement. *See* AR 476. Plaintiff participated in that mediation, AR 3, and was named in the agreement, AR 476. The agreement released "Pre-Suit Defendants" from "any and all claims made or that could have been made in the Pre-Suit Demand or arising out of or related to the facts alleged in the Pre-Suit Demand." AR 478–89. To secure this release, Plaintiff agreed to cause her insurer (Markel)[1] to wire certain sums of money to the patient. AR 476–77. Markel made that payment in August 2019. AR 1.

i. The Initial Report

Afterward, in April 2021, Markel submitted a Medical Malpractice Payment Report ("Malpractice Report") to the NPDB. AR 1–4. In the report, Markel described the treatment that the patient received along with the resulting injury. AR 2. In describing the allegations of the malpractice claim, Markel wrote that the patient's injuries occurred "[a]s a result of the insureds' negligence." *Id.*

[1] Markel Service Corporation is the claims administrator for Evanston Insurance Company, Pl.'s Mot. at 6 n.1, which is listed as Plaintiff's insurer in the Administrative Record, AR 476–77. For the sake of clarity, the Court uses "Markel" to refer to Plaintiff's insurer.

ii. Plaintiff's Dispute of the Report

Plaintiff disputed Markel's report through administrative channels in September 2020. AR 99. Specifically, Plaintiff raised four points of dispute with the Agency. AR 13. Points 1 and 2 alleged that the Malpractice Report's description of the specific procedures that the patient underwent were inaccurate as to Plaintiff, *id.*, because "she was not involved in the care and treatment of [the] patient, and she had no supervisory role over those who were involved in the care and treatment of [the] patient, Pl.'s Mot. at 12.

Points 3 and 4 alleged that the Malpractice Report's allegation of "improper performance" and conclusion that injuries occurred "as a result of insureds' negligence" were inaccurate, AR 13, presumably for the same reasons as Plaintiff's first and second dispute points.

In response to requests by HHS, AR 108–09, 210–211, Markel provided the Agency with the Draft Complaint, AR 150–209, the Settlement Agreement, AR 111–34, and the Notice of Intent, AR 212–34.

iii. HHS Decision on Dispute

HHS issued its decision in November 2020. AR 241. The Agency determined: "There is no basis to conclude that the Report should not have been filed in the NPDB or that it is not accurate." AR 241. The Agency then addressed Plaintiff's points of dispute specifically. The Agency's discussion of Plaintiff's dispute points is somewhat confusing. The Agency responded to five dispute points, *see* AR 242–43, but Plaintiff appears to have only raised four, *see* AR 13. To avoid confusion, the Court refers to the substance of the disputes.

First, the Agency determined that it did not have authority to address Plaintiffs' disputes as they relate to the descriptions of treatment and injury because "they speak to the underlying merits of the case." AR 243.

Second, HHS concluded that that Plaintiff was "described as a defendant in the patient's claim (Notice of Intent) and in the subsequent settlement documents, and a payment was made on [her] behalf." *Id.* The Agency based its conclusion on the NPDB Guidebook. AR 242 n.3; *see also* Nat'l Prac. Data Bank Guidebook ("Guidebook"), U.S. Dep't of Health & Hum. Servs. (Oct. 2018), https://www.npdb.hrsa.gov/resources/NPDBGuidebook.pdf [https://perma.cc/NE4C-DRS7]. On that basis, the Agency considered it irrelevant whether Plaintiff was ultimately dropped from the complaint, participated in mediation only because of the "devastating financial threat of a lawsuit," or Plaintiff was "not involved in the care and treatment of the patient." AR 243. The Agency also wrote that "[t]he Notice of Intent initiates litigation for medical negligence and personal injury." *Id.*

iv. HHS's Reconsideration

Considering the Agency's puzzling enumeration of its responses to Plaintiff's Dispute Points addressed above, Plaintiff requested reconsideration. AR 265–66. Afterward, HHS recommended that Markel make certain corrections to the Report, AR 375, but noted that the Agency's response did "not constitute a decision on Dr. Daly's request for review of the Report," AR 376.

HHS issued its final decision in February 2024. AR 497. The Agency began by restating that reporting is required for a physician "named, identified, or otherwise described in both the written complaint or claim demanding monetary payment for damages and the settlement release

or final adjudication." AR 499–500. Once again, HHS relied upon the Guidebook to assert that a "written complaint" includes "any form of writing, including pre-litigation written communications." AR 500 (quoting Guidebook at E-20).

The Agency concluded that the Notice of Intent satisfied the "written complaint" requirement and that the Notice's request for "liability insurance information" constituted a "demand for payment." *Id.* Accordingly, the Agency decided that the Notice of Intent was sufficient to trigger Markel's reporting obligations. *Id.*

With respect to Plaintiff's challenge to the Report's description of "negligence," the Agency determined that the Notice of Intent's allegations were sufficient to justify the description. AR 501–02. Similarly, the Agency determined that Plaintiff's dispute of the allegation of "improper performance" must fail even if Plaintiff was not involved in actually treating the patient because the allegation in the Notice concerned "failure to supervise." *Id.*

v. Present Case

After exhausting her administrative remedies with HHS, AR 503, Plaintiff filed the present lawsuit, *see* Compl., ECF No. 1. Parties have cross-moved for summary judgment. *See* Pl.'s Mot.; HHS Mot. Those motions are ripe for this Court's review.

## II. Legal Standard

### A. Summary Judgment

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But "[i]n APA cases such as this one, involving cross-motions for summary judgment, 'the district judge sits as an appellate tribunal. The "entire case" on review is a question

of law.'" *FirstHealth Moore Regional Hospital v. Becerra*, 560 F. Supp. 3d 295, 303 (D.D.C. 2021) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083–84 (D.C. Cir. 2001)).

**B. Subject-Matter Jurisdiction**

Federal jurisdiction is limited by Article III of the Constitution. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 145 S. Ct. 41, 47 (2025). "Federal courts are empowered—and indeed, have an obligation—to undertake an independent investigation to assure itself of its own subject-matter jurisdiction." *Schindler Elevator Corp. v. Wash. Metro. Area Transit Authority*, 514 F. Supp. 3d 197, 202 (D.D.C. 2020); *see also In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir. 1997) ("All federal courts[] 'are under an independent obligation to examine [their] own jurisdiction . . . .'" (quoting *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990))). The Supreme Court has confirmed that "the court cannot proceed unless it makes an independent determination that it has jurisdiction." *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025).

**C. Standing**

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1554 (2024). "For there to be a case or controversy under Article III, the plaintiff must have a "personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Rained v. Byrd*, 521 U.S. 811, 819 (1997)).

"To establish standing . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 144 S. Ct. at 1555.

An injury in fact is an "invasion of a legally protected interest which is . . . actual or imminent." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *All. for Hippocratic Med*, 144 S. Ct. at 1556.

"The causation requirement is central to Article III standing. Like the injury in fact requirement, the causation requirement screens out plaintiffs who were not injured by the defendant's action. Without the causation requirement, courts would be 'virtually continuing monitors of the wisdom and soundness' of government action." *All. for Hippocratic Med.*, 144 S. Ct. at 1557 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)).

"[C]ausation and redressability [] are often 'flip sides of the same coin.'" *Id.* at 1555 (quoting *Sprint Comms. Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)). Therefore, "If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Id.*

When determining whether a plaintiff has carried its burden to establish standing, the Court "need not accept thread-bare recitals of the elements of standing . . . ." *Marouf v. Azar*, 391 F. Supp. 3d 23, 29 (D.D.C. 2019) (citing *Arpaio*, 797 F.3d at 19).

## III. Analysis

### A. Standing

Plaintiff has not carried her burden to demonstrate standing. The Complaint itself does not allege an injury in fact resulting from her inclusion in the database. *See* Compl. Her summary judgment motion does include the brief statement that HHS's decision has grievously damaged Dr.

Daly." Pl.'s Mot. at 21. In a footnote, Plaintiff argues that a malpractice report "is considered a 'black mark' against the practitioner." Pl.'s Mot. at 21. But a general characterization of these reports is not sufficient. *Cf. Kilvington v. Dep't of the Air Force*, No. 23-402, 2025 WL 5096222, at *12 (D.D.C. Nov. 21, 2025) (holding that a plaintiff demonstrated standing based on an NPDB report where the plaintiff was fired and had not been employed since).[2]

True, when alleging injury in fact at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Sierra Club v. Env't Prot. Agency*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (quoting *Lujan*, 504 U.S. at 561). But "nondescript and conclusory allegations of injury are not the type of general factual allegations from which the Court may presume the specific facts necessary to ensure that the plaintiff has standing, and are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized." *Brown v. Fed. Bureau of Investigation*, 793 F. Supp. 2d 368, 374 (D.D.C. 2011) (Lamberth, C.J.) (quoting *Wright v. McPhie*, No. 04-1204, 2005 WL 3273556, at *3 (D.D.C. Sep. 27, 2005)).

And "at the summary judgment stage, plaintiffs 'can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts"' sufficient to establish their standing." *Or. Env't Council v. Internal Revenue Serv.*, 836 F. Supp. 3d 1, 25 (D.D.C. 2026) (quoting *Lujan*, 504 U.S. at 562).

---

[2] Though Plaintiff cites some cases in footnotes that describe possible reputational injury, she does not allege that her reputation has been damaged. *See* Pl.'s Mot. at 21 n.5, Pl.'s Reply at 12 n.5.

Because Plaintiff has failed to sufficiently establish standing, she has failed to demonstrate that she is entitled to judgment as a matter of law. The Court will accordingly deny Plaintiff's motion for summary judgment without prejudice.

But the Court cannot grant HHS's motion for summary judgment either. Standing speaks to the Court's jurisdiction, so it would be improper for the Court to proceed to the merits of the dispute. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." (citations omitted)). Therefore "if the Court finds that it lacks jurisdiction at the summary judgment stage, the proper course is to dismiss without prejudice, rather than grant summary judgment." *Amica Ctr. for Immigr. Rts. v. U.S. Dep't of Just.*, No. 25-298, 2025 WL 1852762, at *9 (D.D.C. July 6, 2025) (citing *Auster v. Ghana Airways, Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008)).

True, a finding that the Court lacks subject-matter jurisdiction would lead to dismissal. *See id.* But the Court is not ruling that it lacks subject-matter jurisdiction at this point. Defendants, for their part, have not moved to dismiss but make some half-hearted defenses regarding potential injury from being listed in the NPDB. *See* HHS Mot. at 10 ("An adverse report does not constitute a 'blacklist' preventing health care practitioners from employment.").

The Court will accordingly deny HHS's Motion for Summary Judgment without prejudice. *See Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 206 (2022) (denying cross-motions for summary judgment without prejudice because standing remained an open question).

## IV. Conclusion

Based on the foregoing, the Court will deny Plaintiff's Motion for Summary Judgment and HHS's Motion for Summary Judgment without prejudice.

An Order consistent with this Memorandum Opinion shall issue.

Date: 28 September, 2026

Royce C. Lamberth
Hon. Royce C. Lamberth
United States District Judge